FITZGERALD *v.* FITZGERALD.

4-7959                                    196 S. W. 2d 765

Opinion delivered October 21, 1946.

*Claude F. Cooper,* for appellant.

*Joe Clay Young,* for appellee.

SMITH, J.   This suit was filed to set aside the probate of the last will and testament of Isaac C. Fitzgerald, which had previously been admitted to probate. It was alleged that the execution of the will had been procured through the undue influence of the testator's wife, and that the testator lacked testamentary capacity. But little effort was made to sustain the allegation that the execution of the will had been procured through undue influence, but much testimony was heard tending to show a lack of testamentary capacity; after hearing all of which the court found "that the petitioners had failed to meet the burden of proving the allegations set out in their complaint" and it was dismissed, from which order is this appeal.

Isaac C. Fitzgerald, the testator, was eighty-one years old at the time of his death, which occurred July 17, 1943, and his will was admitted to probate on the 6th day of August, 1943.

The testator had been twice married. He had one son, P. A. Fitzgerald, by his first marriage. By his second marriage he had a daughter named Mattie, who married one Newman. He had no other children. Under

the will here contested, the testator devised only one dollar to each of these children. The balance of his estate, consisting of an 80-acre farm, and a small amount of personal property, was devised to his wife, who survived him and was named as executrix without bond. He had lived with his last wife for thirty years.

This appeal presents only one question, the question of fact, whether the testator had testamentary capacity at the time of the execution of the will. Twelve witnesses testified on behalf of appellants, and three on behalf of appellee, and this testimony may be summarized as follows:

The will was dated June 24, 1938. In June, 1934, Mr. Fitzgerald, the testator, became seriously ill, and was carried to a hospital where a prostatic operation was performed, and he remained in the hospital until August following his operation. He was never afterwards as vigorous physically and mentally as he had previously been. Various witnesses testified to numerous incidents which to say the least were eccentric. He required the constant attention which his wife gave him. He stated to a number of persons that he had made a will in which he devised his property to his wife, with remainder to his children in equal shares, and so he had, but under the will here in question he revoked his former will which was dated September 3, 1937.

A number of witnesses testified that Mr. Fitzgerald became quite feeble, but much of this testimony relates to his condition subsequent to the date of the will. Several witnesses testified that a cancer developed on the side of Mr. Fitzgerald's head, which was removed by a surgical operation.

A neighbor testified that she had had dinner at Mr. Fitzgerald's home, that he finished eating before they did, and that he left the table and washed his false teeth in a bucket containing the drinking water, and Mrs. Fitzgerald said, ''Don't say anything to him, because this is one of Daddy's off days.'' Other witnesses expressed the opinion that while Mr. Fitzgerald was not ''plumb crazy, he was not in his right mind.'' But if Mr. Fitz-

gerald had what witnesses referred to as "off days" it appears certain that there were other days which were not off days, and that one of these days was the day on which the will was executed.

Lacey Gibson, the tenant on the farm, who apparently has no interest in the litigation, testified that Mr. Fitzgerald asked witness to take him to the law office of N. F. Lamb in Jonesboro, as he wished to execute a new will giving his wife full control of all of his property. A party consisting of Gibson, his wife and Mr. Fitzgerald and his wife went to Jonesboro to see Mr. Lamb. No reference was made to the will during the trip. When the party reached Jonesboro, Mr. Fitzgerald ascended the stairs leading to Mr. Lamb's office, without assistance, and Mr. Lamb prepared the will under directions and upon information given him by Mr. Fitzgerald. The chancellor knew, as we do, that for half a century Mr. Lamb was one of the state's leading and most reputable lawyers. Gibson saw the will prepared and signed, but he did not sign as an attesting witness, nor did his wife whose testimony corroborated that of her husband. Mrs. Fitzgerald, who was present during the conversation between Mr. Lamb and Mr. Fitzgerald had nothing to say. After the execution of the will, the party continued their journey to Clay county, where Gibson carried Fitzgerald to make a visit there.

The impression which some of the witnesses had that Mrs. Fitzgerald dominated her husband may have originated in the fact that Fitzgerald was an illiterate man unable to sign his name, and Mrs. Fitzgerald attended to all of Mr. Fitzgerald's affairs which required any writing to be done. Fitzgerald signed the will by mark.

The most convincing testimony in the case was that given by Dr. Ira Ellis, who had practiced his profession for thirty years, the last twenty-seven of which was in the neighborhood where Fitzgerald lived, and he had been Fitzgerald's family physician for a number of years. He was the immediate past president of the Poinsett-Craighead County Medical Association. He recalled the prostatic operation and performed the operation on

Fitzgerald's head, this being to remove a growth on the scalp, which was not malignant, and had no, connection with the skull, and he testified that neither operation affected Mr. Fitzgerald's mentality. This witness testified that he knew Mr. and Mrs. Fitzgerald as their family physician in their home, and that Fitgerald was not an ignorant man, although illiterate. He regarded Fitzgerald as a man of fixed opinions and his wife as unusually obedient. He attended Fitzgerald in his last illness, and he had never observed any mental breakdown; on the contrary, Mr. Fitzgerald talked rationally on the night he died.

We conclude that the finding in this case is not contrary to a preponderance of evidence, and the decree is, therefore, affirmed.